STATE ex rel. FITZPATRICK v. MEYERS et al., *Judges of the County Court of Nodaway County, Appellants.*

Dramshop License, Petition for Signers: STATUTE. Under Revised Statutes of 1879, sections 5438, 5442, as amended by the act of the general assembly of March 24th, 1883, (Acts, pp. 87, 88,) the petition for a dramshop license, where the dramshop is to be kept in a block or square of a city containing 2,500 inhabitants or more, signed by two-thirds of the assessed tax-paying citizens of said block or square, is sufficient in respect to such signers, and the law being otherwise complied with by the applicant for the license, it is obligatory on the county court to issue it.

*Appeal from Nodaway Circuit Court.*—HON. H. S. KELLEY, Judge.

AFFIRMED.

*S. R. Beech* and *W. C. Ellison* for appellants.

Revised Statutes, section 5438, as amended by Laws of 1883, page 87, means that a dramshop petition shall be signed by two-thirds of the assessed tax-paying citizens of the city. Unless the legislature so intended, section 5438 would seriously conflict with section 5442, and a county court in many instances might be compelled to grant dramshop licenses on petitions containing less than one-half, one-

third or even one-fourth of the names of the tax-payers in the block at the time of signing the petition. If the construction contended for by relator be correct, section 5438 compels all county courts to grant licenses on petitions signed by two-thirds of the tax-payers of the block, as shown by the last previous annual assessment of the city, and this will be the case although two-thirds of the tax-payers of so small a territory as a block as shown by assessment books a year or two old may not, and quite often do not, include a majority of the tax-paying citizens of the same block at the time the petition is signed. The construction which requires two-thirds of the tax-payers of the city, is the one most consistent with a rational and consistent purpose in the legislative mind. The retail liquor traffic is defined to be " a demoralizing and pauper-making business," (*Scmidt v. State*, 14 Mo. 137,) and is a mere privilege, and in determining the extent to which the privilege goes, the law should be strictly construed against the traffic.

*L. Isham White, John Edwards* and *Johnston & Anthony* for respondent.

The legislature has provided in Revised Statutes, sections 5442, 5438, as amended by the act of March 24th, 1883, (Sess. Acts, pp. 87, 88,) for two classes of petitioners as respects the number of signers : 1st, A majority petition; 2nd, A petition of two-thirds. When a majority petition is presented, the court has jurisdiction to act, and may grant a license if the applicant be qualified; when a petition signed by two-thirds of the " proper names is presented, and the applicant is qualified," then the court shall grant such license. That is when the majority petition is presented, the courts have a discretion, and may grant or refuse the license as to them seems best, a matter of policy. When the two-thirds petition is presented, and the applicant is qualified, the court must grant the license as a matter of right; to hold otherwise would render the pro-

viso wholly inoperative, and why should a meaningless proviso be inserted in any statute? 1 Kent, 461, 462; Rule 36, Blackwell Tax Titles, (4 Ed.) 610 side p. "The most natural and genuine way of construing a statute, is to construe one part by another part of the same statute, and so that, if possible, no sentence, clause or word shall be treated as superfluous, void or insignificant, and especially where the two clauses are parts of the same section, inseparably connected with and necessarily dependent upon each other." *State to use, etc., v. Richardson*, 35 Mo. 385, 388. As the dramshop law stood prior to the amendments of 1883, the county court could not be compelled to grant license. *State ex rel. Kyger v. Holt Co. Ct.*, 39 Mo. 521. Unless it had been the intention of the legislature to change the law, there had been no use of the proviso in section 5438, and the intention of the legislature should be carried out. *State ex rel. Mo. M. L. Ins. Co. v. King*, 44 Mo. 283, 285. The county court, in its final order disposing of the application of relator, Thomas Fitzpatrick, found in his favor as to every fact upon which the court heard and weighed the evidence and acted judicially. The license was refused solely on the ground that the petition filed with the clerk of the county court, December 6th, 1883, had not subscribed thereto the proper names of two-thirds of the tax-paying citizens of the whole of the city of Maryville, as shown by the last previous annual assessment of said city. Relator claims that no such petition is required by sections 5438 and 5442, of the Revised Statutes, as amended by the act of the legislature of this State, approved March 24th, 1883, (Sess. Acts 1883, pp. 86, 88,) and that said petition, containing as found and admitted in said order of the county court, the proper names subscribed thereto of two-thirds, and more of the assessed tax-paying citizens in block number 6, one of the blocks in said city, as shown by the last previous annual assessment of said city, was all that said amended sections required. If the relator's interpretation of the statute, is the true one, the error committed by the county court, is

an error of law, and may be corrected by the writ of mandamus. Whenever the law vests in boards of supervisors or inferior courts, acting under statutory powers, certain prescribed duties which, in their character, are partly judicial and partly ministerial, if such tribunals have gone forward, in any given case involving the rights of the citizen, and fully performed the judicial part, the law imposes upon them an obligation to perform the ministerial part, and if they refuse to do so, whether through malice, caprice or an honest mistake of the law, if there is no other mode of relief for the party injured prescribed by law, mandamus will lie to coerce the performance of the ministerial part. *People v. Board of Supervisors of Schenectady*, 35 Barb. 408; *Thomas v. Armstrong*, 7 Cal. 286; *People v. Supervisors of Otsego*, 51 N. Y. 401, and 53 Barb. 564; High's Extra. Leg. Rem., (1 Ed.) § 327; Moses on Mand., pp. 41, 125, 126; *Ex parte Milner*, 6 Eng. Law and Eq. Rep. 371; *People v. Perry*, 13 Barb. 206. And even with respect to courts of general and common law jurisdiction, where the judgment on a question of law is wrong, and no remedy exists by appeal or writ of error, mandamus will lie, and in such proceeding the court having jurisdiction to issue the writ will interpret the law correctly, and prescribe what judgment therein should be given by the court to which the writ is directed. *State ex rel. Harris v. Laughlin*, 75 Mo. 358; *Castello v. St. Louis Circuit Ct.*, 28 Mo. 259; *Ex parte Cox*, 10 Mo. 742; *State ex rel. Webster v. Knight*, 46 Mo. 83.

The alternative writ properly directed the judges of the county court, as a county court, to fix and assess the tax prescribed by section 5441, of the Revised Statutes as amended. That matter was to be determined without evidence. The clerk of the county court fixed it in vacation, under section 5446 of Revised Statutes. Said section 5441 is mandatory. It reads: " Upon every such license there shall be levied a tax not less than $25, nor more than $200, for State purposes, not less than $250, nor more than $400 for county purposes, for every period of six months; the

amount of tax in every instance to be determined by the court granting the license. Act of March 24th, 1883, amending section 5441, Sess. Acts 1883, p. 87. In fixing the amount of the tax, within the limits of the law, the judges of the county court act ministerially, as would the clerk in vacation. If so, their duty is clearly defined by the law, and they must perform it. *State ex rel. Adamson v. Lafayette Co. Ct.*, 41 Mo. 221 ; *State ex rel. Jackson v. Co. Ct. of Howard Co.*, 41 Mo. 247 ; *State ex rel. School District v. Byers*, 67 Mo. 706 ; High's Extra. Legal Rem., (1 Ed.) § 80.

NORTON, J.—This is a proceeding to compel the county court of Nodaway county, Missouri, by the writ of mandamus, to issue a dramshop license to the relator.

On the 6th day of December, 1883, the relator, Thomas Fitzpatrick, filed with the clerk of the county court of Nodaway county, Missouri, under sections 5438 and 5442 of the Revised Statutes, a petition asking that a license be granted to him to keep a dramshop in his place, being a room on the ground floor in a certain brick building, having a frontage of twenty-two feet, situated on the east one-third of lot 2, in block 6, in the original town (now city) of Maryville, in Nowaway county, Missouri. This petition had subscribed thereto the proper names of two-thirds and more of the tax-paying citizens of said block, as shown by the last previous annual assessment of said city. At the adjourned term of the court of Nodaway county, held December 10th, 1883, said petition was laid before said county court, and relator made and filed his application as required by section 5438 of the Revised Statutes. This application was accompanied by the bonds required by sections 1601 and 5440 of said statutes, and certified copies of the affidavits required by sections 1601 and 1605 of said statutes, showing that the originals had been properly made and filed with the county clerk, and by a verified statement of liquors on hand, as required by se tion 5439 of said statutes,

The application was heard by the county court December 10th, and continued to December 11th, 1883, at which last named date the county court made a final order in the matter.

In this order the county court finds that the relator is a person of good character; that the bonds and affidavits filed with the application and with the county clerk, are good and sufficient, as required by law; that relator was in no wise disqualified by any of the provisions of chapter 98 of the Revised Statutes to receive the license asked, and that the block in which the dramshop was sought to be located, is one of the blocks of the city of Maryville; that said city contained more than 2,500 inhabitants, and that said petition, filed with the clerk of the county court as aforesaid, December 6th, 1883, had subscribed thereto the proper names of two-thirds and more of the tax-paying citizens of said block, as shown by the last previous annual assessment of said city. This order eliminated from the case every fact necessary to be passed upon by the court, except the fixing of the amount of the State and county tax, as required by section 5441 of the Revised Statutes, and the court refused to issue the license, as stated in the order, solely because said petition had not subscribed thereto the proper names of two-thirds of the tax-paying citizens of the whole of said city of Maryville.

On the 14th day of December, 1883, relator filed in the office of the clerk of the circuit court of Nodaway county, in vacation, his petition praying that an alternative writ of mandamus issue against the appellants, as judges of the county court of Nodaway county, directing them to assess said tax (as required by said section 5441) and issue said license to relator, or show cause to the contrary. On this petition the alternative writ was issued, as prayed, December 14th, 1883, by Hon. Henry S. Kelley, judge of the circuit court, returnable December 20th, 1883, that being the day fixed for the commencement of the adjourned term of the said circuit court.

Defendants waived service of this writ, and entered their appearance thereto. The case came on for hearing December 26th, 1883, on the demurrer of defendants to the alternative writ. The court overruled this demurrer, and defendants declining further to plead, the court rendered final judgment in favor of relator, directing that a peremptory writ of mandamus issue against defendants, as judges of said county court, commanding them to fix and assess the tax on said license, and issue the same as prayed in the alternative writ. Defendants bring the case to this court by appeal.

The question decisive of this case is, whether a petition for a dramshop license, where the dramshop is to be kept in a block or square of a city containing a population of 2,500 inhabitants or more, should be signed by two-thirds of the assessed tax-paying citizens in such block or square, or by two-thirds of the assessed tax-paying citizens of the whole city, before it becomes obligatory on the county court to grant license to the applicant.

It is contended on the one hand, by counsel for defendants, that the law requires that such a petition should be signed by two-thirds of the assessed tax-paying citizens of such city, while it is contended on the other hand, by relator's counsel, that such petition is only required to be signed by two-thirds of the assessed tax-paying citizens in the block or square where the dramshop is to be kept. The solution of the question depends upon the construction of sections 5438 and 5442, Laws of 1883, page 87.

Section 5438, as amended, reads: "Applications for a license as a dramshop keeper, shall be made in writing to the county court, and shall state specifically where the dramshop is to be kept, and if the court shall be of opinion that the applicant is of good character, the court may grant a license for six months. Provided, however, that if the court shall be of the opinion that the applicant is a person of good character, and the petition required in section 5442 of this chapter contains the proper names subscribed thereto

of two-thirds of. the assessed tax-paying citizens, as shown by the last previous annual assessment of the city, incorporated town or municipal township where such dramshop is to be kept, then the court shall grant such license."

Section 5442, as amended, reads : " It shall not be lawful for any county court, in this State, or clerk thereof in vacation, to grant any license to keep a dramshop in any town or city containing 2,500 inhabitants or more, until a majority of the assessed tax-paying citizens in the block or square in which the dramshop is to be kept, shall sign a petition, asking for such license to keep a dramshop in such block or square in such town or city, nor in any city containing less than 2,500 inhabitants, nor in any incorporated town or municipal township until a majority, both of the assessed tax-paying citizens therein, and in the block or square in which the dramshop is to be kept, shall sign a petition asking for such license to keep a dramshop therein."

It will be perceived that by said section 5438 it is made the duty of a county court to grant a dramshop license when satisfied that the applicant is of good character, and when the petition required by section 5442, contains the proper names subscribed thereto of two-thirds of the assessed tax-paying citizens, as shown by the last previous annual assessment of the city, incorporated town or municipal township where such dramshop is to be kept.   We are thus referred by section 5438 to section 5442 to ascertain what petitions are required by this latter section, and by inspecting the said section it will be seen that when the petition is for license to keep a dramshop in a block or square of a city containing 2,500 inhabitants or more, it only requires such petition to be signed by a majority of the assessed tax-paying citizens in the block or square where the dramshop is to be kept, and that it was not the intention of the legislature to require such a petition to be signed by a majority of the tax-payers. of the whole city, is clearly shown by the fact that the section provides that in cities containing less than 2,500 inhabitants the petition for a dramshop

license shall be signed not only by a majority of the assessed tax-paying citizens of the city, but also a majority of those in the block where the dramshop is to be kept. In other words, this section provides that in a city with a population of 2,500 or more, it is only necessary that the petition should be signed by a majority of the assessed tax-paying citizens in the block, where the dramshop is to be kept, but that in cities with less population than 2,500, the petition must be signed not only by a majority of the assessed tax-paying citizens in the block, but also by a majority of such citizens of the whole city.

When a petition is presented under section 5442, for a license to keep a dramshop in a city containing 2,500 inhabitants or more, if it is signed only by a majority of the assessed tax-paying citizens in the block where the dram-shop is proposed to be kept, the county court, in their discretion, may or may not grant the license; but if such petition is signed by two-thirds of the assessed tax-paying citizens of such block or square, and the court is satisfied that the applicant is of good character, section 5438 declares that the court " shall grant the license." This language is imperative and mandatory, and deprives the court of discretion in the matter, and imposes on the court the duty of granting license to the applicant, if he be of good character, and complies with all the requirements of the statute as to filing affidavit, giving bond, etc.

It is contended by counsel for defendants that the following clause in section 5438, viz., " the proper names subscribed thereto of two-thirds of the assessed tax-paying citizens, as shown by the last previous annual assessment of the city," means two-thirds of the assessed tax-paying citizens of the city, as shown by the last previous annual assessment. This view is opposed to the plain reading of the section, and we know of no rule of construction which would lead us to the conclusion for which counsel contend.

We think the clause, " as shown by the last previous annual assessment of the city," means what it says; and

39—80

as by section 5442, such a petition as was presented in this case was required to be signed by two-thirds of the assessed tax-paying citizens in the block, and as the county court was required by section 5438 to ascertain whether the signers of the petition amounted in number to two-thirds of the assessed tax-paying citizens of such block, we are of the opinion that the legislature evidently intended nothing more by the use of the words "as shown by the last previous annual assessment of the city," than to declare that the county court in determining the question whether the signers of said petition were assessed tax-paying citizens, should be governed in their determination by the last previous annual assessment of the city, and no better rule for ascertaining who are assessed tax-paying citizens, could have been laid down than the one requiring the last previous annual assessment to be looked to as the evidence to establish this fact.

The judgment of the court awarding the peremptory writ is hereby affirmed. All the judges concurring.