## SCARRITT et al., Appellants, v. THE COUNTY COURT OF JACKSON COUNTY, Respondent.

### Kansas City Court of Appeals, June 3, 1901.

1. **Dramshops: STATUTORY CONSTRUCTION: SECTIONS 2993 AND 2997.** Per Broaddus, J.: Section 2997 is not complete in itself but must be construed with reference to section 2993, and as all the provisions of both are alike *in pari materia*, effect should be given to them if possible. Per Ellison, J., Smith, P. J., concurring: Section 2993 refers to section 2997 for the character of the petition of license but not to ascertain the character of signers; while the two sections were enacted for wholly different purposes, they are not necessarily inharmonious because of difference of phraseology.

2. ——: ——: ——: **AB INCONVENIENTI.** Per Broaddus, J.: Statutes should be construed in the most beneficial way which the language will permit to prevent absurdity, hardship or injustice, to favor public convenience and to avoid all prejudice to public interest. Per Ellison, J., Smith, P. J., concurring: Arguments *ab inconvenienti* may be brought against any distinct construction of a statute, as well as an argument of an opening for fraudulent practices; but the activity of the citizens and officers will generally secure the end contemplated by the law.

3. ——: ——: ——: **HARMONIZING PROVISIONS.** Per Broaddus, J.: In construing statutes it is the duty of a court, if possible, to harmonize the provisions, and to effect this it may be necessary to depart from a literal construction; the word "property" in section 2997 means real property and not personal. Per Ellison, J., Smith, P. J., concurring: The word "property" in said section need not be real estate, for it is not so stated, and there is no overpowering reason to reject the plain general words and say that it meant any particular kind of property.

4. ——: ——: ——: **TAXPAYING CITIZENS: REAL ESTATE.** A petition for saloon license was signed by a majority of the taxpaying citizens owning property in the block but a majority of the

taxpaying citizens owning real estate were not signers of the peti-- tion. *Held*, it authorized the court to grant a license under section 2997, whereas, had the application been under section 2993, applying for license of six months only and intending to deprive the county court of its discretion in granting the license, then the petition would have to be signed by two-thirds of the assessed taxpaying citizens, who are voters and appear to be such taxpayers and voters on the last annual assessment and last vote, as well as guardians of minors, who own real estate in the block.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,*
Judge.

AFFIRMED.

*Scarritt, Griffith & Jones* for appellants.

(1)   We contend that only one petition of property-owners is contemplated in the law, whether the issue is raised under section 2997, or under section 2993.   State ex rel. v. Meyers, 80 Mo. 601, 608, 609.   (2)   The expression "property-owners," as used in section 2997, means real estate owners. State ex rel. v. Howard County, 90 Mo. 597; R. S. 1899, sec. 2993; State ex rel. v. Meyers, 80 Mo. 609, 610.   (3)   The courts will avoid a construction that would convict the Legislature of enacting an absurd law.   City of St. Joseph ex rel. v. Landis, 54 Mo. App. l. c. 322; State ex rel. v. Higgins, 84 Mo. App. l. c. 537.   (4)   The surrounding circumstances will be looked at and common sense used in statutory construction.   Bank v. Haywood, 62 Mo. App. 556; Cole v. Railroad, 47 Mo. App. 624.   (5)   The following recent cases throw light upon the statute in question.   State ex rel. v. Higgins, 71 Mo. App. 181; Tanner v. Bugg, 74 Mo. App. 196; State ex rel. v. Higgins, 84 Mo. App. 531.

*Harkless, O'Grady & Crysler* for respondents.

Submitted printed argument.

BROADDUS, J.—The relators instituted proceedings in the circuit court of Jackson county for a writ of certiorari, to have the respondents, the judges of the county court, to certify to the circuit court a transcript of the records, entries and proceedings had in said county court on the application of C. L. Morley for a dramshop license; and also all the original papers pertaining to the matter. The cause was heard in the circuit court where the finding was against the relators, from which they have appealed. The object of the proceedings is to obtain a judicial construction of sections 2993-2997, Revised Statutes 1899.

C. L. Morley made application for a license as a dramshop-keeper in a certain block in Kansas City, Missouri. After the hearing of his application the county court granted him a license. As it is the judgment of the county court in the premises that is called in question, that part which is material in order to understand the contention of the parties is as follows:

"Now on this day comes C. L. Morley and presents his written application, and also a petition for a license to keep a dramshop at No. 800, Walnut street, in Kansas City, Missouri, and said application being taken up for hearing and the court having heard the evidence, and considered the same, finds and is of the opinion that the said applicant is a law-abiding, assessed, and taxpaying male citizen of said Kansas City, above the age of twenty-one years, that the petition is signed by a majority of the assessed taxpaying citizens and guardians of minors owning property in the block in which it is sought by said application to obtain a license to keep

said dramshop, but is signed by only five of the seventeen citizens of said city who own real estate in said block," etc.

Relators contend that the county court had no authority to grant the license, as it is made to appear by the finding of the court that a majority of the taxpaying citizens, owning real estate, were not signers to the petition for license. It is admitted by the respondents that such was the fact, but it is admitted and agreed on both sides, that a majority of the taxpaying citizens owning property in the block were signers to the petition. The issue thus clearly made is submitted for the determination of this court. In the briefs and argument of counsel, it is further admitted that there is an apparent if not a real conflict between the two sections of the statute, supra. Section 2993 is as follows:

"Application for a license as a dramshop-keeper shall be made in writing to the county court, and shall state specifically where the dramshop is to be kept, and if the court shall be of the opinion that the applicant is a law-abiding, assessed, taxpaying male citizen above twenty-one years of age, the court may grant a license for six months; *Provided,* however, that if the court shall be of the opinion that the applicant is a law-abiding person, as aforesaid, and the petition required in section 2997 of this article contains the proper names subscribed thereto of two-thirds of the assessed taxpaying citizens *and guardians of minors owning real estate therein,* as shown by the last previous annual assessment and vote of the city, incorporated town or municipal township where such dramshop is to be kept, then the court shall grant such license."

Section 2997 is as follows:

"*No license to be granted without petition.*—It shall not be lawful for any county court in this State, or clerk thereof in vacation, or any other authority, to grant any license to keep a dramshop in any town or city containing two thousand

inhabitants or more, until a majority of the assessed taxpaying citizens, *and guardians of minors owning property in the block* or square in which the dramshop is to be kept, shall sign a petition asking for such license to keep a dramshop in such block or square, in such town or city; * * * *"

The relators contend that the two sections quoted must be read and construed together, and that they are not separate provisions. And they claim that the term *owning real estate* applies to taxpaying citizens; or, in other words, that the Legislature intended, by the use of the term, to limit the qualification of the signers to a petition for a dramshop to taxpaying citizens owning real estate. In section 2993 the language used is, "assessed taxpaying citizens and guardians of minors *owning real estate.*" In section 2997 the language is, "assessed taxpaying citizens and guardians of minors *owning property.*" In the last section the words *real estate* are not used. If this section is to be construed as complete within itself there would be no difficulty about its construction. But it is obvious that it is not, for section 2993 requires that the petition shall be as required in section 2997. The first subdivision of section 2993 also provides where the dramshop shall be kept and that the applicant for a license shall be "a law-abiding, assessed taxpaying male citizen above twenty-one years of age"—and this proviso governs both sections alike. We, therefore, conclude that section 2997 is not complete in itself but must be construed with reference to section 2993, and as all the provisions of both are alike *in pari materia,* effect should be given to them if possible. Pitt v. Bishop, 53 Mo. App. 600; City of St. Joseph v. Porter, 29 Mo. App. 605; City of St. Louis v. Howard, 119 Mo. 41; State ex rel. v. Slover, 126 Mo. 652; State ex rel. v. Hostetter, 137 Mo. 636.

We do not agree with the appellants' claim that the words

*owners of real estate* apply to the class denominated *assessed taxpaying citizens,* the same as to the class denominated *guardians of minors.* A taxpayer is one who pays taxes, and this definition includes all kinds of taxes, including taxes upon personal property, poll taxes, and taxes upon real estate. And we must conclude that when the Legislature used the words "assessed taxpaying citizens," it meant to include all who were assessed taxpaying citizens. The Legislature went further and provided a rule for the guidance of the county courts in determining who were proper petitioners by inserting these words: "as shown by the last previous annual assessment and vote of the city." In other words, they must be voters and assessed in the city. But as minors were disqualified by section 2997, the provision was inserted to protect their rights through their guardians, when owning real estate. As a rule, minors own only such personal property as choses in action, bonds and other securities, which would not be affected whether there was or was not a saloon in a given block of a city. But their real estate would be as much affected as that of any other real estate owner, and hence the provision named.

If it should be held that real estate owners are the only qualified petitioners, great injustice would be done to owners of personal property whose property is situated in the block and who were assessed and paid their taxes upon their property. It would not be hard, we surmise, to find in Kansas City, as well as in all other towns and cities of the State of over two thousand inhabitants, many blocks wherein the buildings are mostly occupied by tenants and but few by the owners; and in some blocks where all the buildings are occupied by tenants alone. In such cases, notwithstanding the tenants may be owners of vast and valuable stocks of merchandise, of immense manufacturing establishments, of all trades, callings and professions, they would be disqualified and could have no voice

under the statute in saying whether a business which might or might not injure their business should be located in their midst. The question is, are only the owners of real estate interested? Why was it that the Legislature required that before a license could be issued a petition should be required containing the names of persons who had interests in the block where the proposed saloon was to be located? What was the policy of the law? This question is answered by the past and cotemporary history of the business of retailing liquors.

It is a well-known fact, that sometimes a saloon in certain localities drives away other business from such localities. It is needless to cite instances of this kind. The fact is too well known. The Legislature intended that those engaged in business in a block should have some protection against a proscribed business, only carried on by the tolerance of the law. To say that only the owners of real estate are interested and that they alone, under the act in question, are qualified petitioners, would be to give the law such a construction as would be absurd and not beneficial. Statutes will be construed in the most beneficial way which the language will permit, to prevent absurdity, hardship or injustice, to favor public convenience and to avoid all prejudice to public interest. State v. Marshall, 48 Mo. App. 560; Kane v. Railway, 112 Mo. 35; Bowers v. Smith, 111 Mo. 45. Such a construction as we are asked to put upon this law would result in hardship and injustice, as a rule, to the majority of the assessed taxpaying citizens.

That provision of section 2997 which provides that, "guardians or minors owning property in the block or square," certainly, if we construe the language literally, is in conflict with the provision in section 2993 where the words used, as we have seen, are, "guardians of minors owning real estate;" because the words "owners of property" form a comprehensive

term which includes all kinds of property; and if it is to be taken literally, any guardian would be qualified as a petitioner if his ward owned any kind of property. We understand, in such cases, where the provisions of the law are inconsistent and contradictory to each other, or a literal construction of a single section would conflict with every other, and with the entire scope and manifest intent of the act, it is the duty of the court, if it be possible, to harmonize the various provisions; and to effect this, it may be necessary to depart from a literal construction of one or more sections. State to use v. Herman, 70 Mo. 441; Cole v. Skrainka, 105 Mo. 303; Kane v. Railroad, 112 Mo. 34; Connor v. Railroad, 59 Mo. 285. A review of the whole act and the reason of the law is, that the Legislature had in contemplation the fact that guardians, as a rule, seldom if ever have charge of personal property of their wards that could be affected, and that the intention was to qualify those only who had charge of real property. It, therefore, follows that we hold that the Legislature, when it used the word *property* in section 2997, meant real property and not personal property. By such a departure from a literal construction of the act, the various provisions of the two sections are made to harmonize, and no injustice is done to the intention of the lawgiver.

But it is contended that if other than real estate owners are qualified petitioners, the county court would be without a guide in determining who are owners of personal property in a block, as the assessment books do not give the location of personal property, and the county court would be at great inconvenience in ascertaining who were such owners; especially in a city like the one in question, in which there is said to be 450 saloons. This supposed inconvenience does not make the construction herein adopted an absurd one, and is no argument against it. The county court would have every means at hand

to ascertain who were property-owners and who were not, and the facts could be ascertained in reference thereto as other facts are in all courts. It would simply be a question of evidence. And as a rule, in the business blocks of a city, it would be no great undertaking to determine definitely the owners of stores, places of business, and occupants of rooms, for they are all numbered. We are not warranted in holding that the county court would be less capable of ascertaining the necessary facts in a given case than other courts whose daily business it is to try issues of fact upon any legitimate evidence, and not upon evidence of a particular kind.

For the reasons given we affirm the judgment of the circuit court dismissing relators' writ. *Smith, P. J.,* and *Ellison, J.,* concur in the result, in a separate opinion.

### SEPARATE OPINION.

ELLISON, J.—I agree with the conclusion reached by Judge BROADDUS, though I do not agree to some of the reasoning by which he reaches that conclusion.

Section 2993 refers to section 2997 for the character of petition for license; that is, whether it be for a block in a city of over two thousand inhabitants, or a town, or township. State ex rel. v. Meyers, 80 Mo. 601. So that wherever the latter requires a majority of petitioners, the former requires two-thirds. But the former by no means refers to section 2997 to ascertain the class or character of *signers* to the petition. As to this latter, it seems to me to be self-evident that the sections stand independent of each other. They are enacted for wholly different purposes. Section 2993 marked a new departure; it contemplates depriving the county court of discretion and makes it mandatory on that court, when a peti-

Vol 89 app—38

tion signed by certain character of petitioners therein named accompanies the application, to grant the license. But section 2997 contemplates that the county court shall retain its discretion and exercise it for the good of the public and as the situation, with reference to the application, may seem to demand. In those instances where the court is to be deprived of discretion, the statute requires a certain larger number and a certain kind of petitioners; while in those instances where the court may exercise a discretion against the petition, the statute requires a less number of petitioners and in many respects a different kind. The reason why there should be a difference is apparent. Whether the Legislature has been wise in fixing upon and specifying what the difference shall be, is a matter with which the courts have nothing to do. Since the sections were enacted for different purposes, they are not necessarily inharmonious because of the phraseology of the one differing from the other. The language used in one differs from that in the other for the reason that the Legislature meant one thing in one of them and a different thing in the other. It was intended to force a license in one instance and to merely permit one in the other.

If it is meant to obtain a license for six months only, and to deprive the county court of discretion in granting it, as contemplated by section 2993, then the application must be accompanied by a petition signed by two-thirds of those qualified to sign for the block, town or township, as the case may be. Who are qualified signers under this section? They are those assessed taxpaying citizens who are voters and who appear to be such taxpayers (on whatsoever kind of property) and voters on the last annual assessment and last vote; as well as all guardians of minors who own real estate in the places aforesaid. If, on the other hand, it is meant to endeavor to obtain a license for a whole year and to abide by the discretion of the county

court as contemplated by section 2997, then the application must be accompanied by a petition signed by a *majority* of those qualified to sign for the block, town, or township, in such case. These are not the same kind of petitioners as those in the other section. These are assessed taxpaying citizens, who need not necessarily be on the last assessment and who need not be voters (for they may be women taxpayers. State ex rel. v. County Court Howard County, 90 Mo. 593): and guardians of minors who may own property in the block where the dramshop is to be kept. This property which the minors must own need not be real estate, for it is not so stated by the law, and there is no overpowering reason why we should reject plain general words and say it meant any particular kind of property. There is no need to reason why the statute should prescribe that the minor should own real estate in one section and any kind of property in the other section. The conditions contemplated by the two sections are different and it is natural that the prerequisite to meet such conditions should be different. At any rate, a statute using plain and unambiguous language is not a subject of construction and must be obeyed. "A statute stands for a reason."

With the exception of adding "guardians of minors," and putting in the word "assessed" in 1889, section 2997, requires, in the same language, the same petitioners which were required by the corresponding sections in each revision beginning with 1865. And, therefore, the authorities on the statute as it has since stood, in this respect, are applicable now. As before stated, the mandatory provision of section 2993 is an independent departure made in 1883, which prescribes its own character of petitioners, leaving the other class to be determined by section 2997 as they were before section 2993 was enacted.

In the foregoing I have assumed that the words "owning real estate therein" in section 2993, and the words "owning

property in the block," etc., in section 2997, refer to minors only. They do not apply to and were not intended as a qualification of the other class of signers. If those words were intended to qualify or apply to the other petitioners, it would scarcely have been necessary to have also particularized that such others should be taxpayers. Besides, the statute formerly (revisions of 1879 and 1889) made no mention of minors and only required petitioners to be citizen taxpayers on any kind of property. The change made, and now found in the revision of 1889, permitting guardians of minors to become petitioners was, I think, intended to restrict the privilege to a certain class of minors, and was not intended as an additional qualification to the adult petitioner.

Arguments *ab inconvenienti*, may be brought forward against any distinct construction of the statute which may be announced. So of fraudulent practices which may take place under any view. It may be hard to thwart them at times, but active citizens and a county court properly imbued with the idea that it is the servant of the law and the people will, in most instances, bring about the end contemplated by the statute.

The result of the foregoing is that I agree that the judgment should be affirmed. *Smith, P. J.,* concurs herein.