# THE STATE OF MISSOURI, Respondent, v. WILLIAM T. KESSELS, Appellant.

Kansas City Court of Appeals, July 2, and October 1, 1906.

1. **DRAMSHOPS: Cities of Second Class: Sales on Sunday.** The charter of cities of the second class, which includes St. Joseph, gives exclusive control of dramshops to such cities and they have power to permit a dramshop keeper to sell liquor on Sunday.

2. ———: ———: ———: **State Control: Municipal Control.** The Legislature may surrender control for misdemeanors to municipalities, but when the surrender is not clear, each may have and enforce laws concurrently.

3. ———: ———: ———: ———: ———: **Statutory Construction.** The charter of cities of the second class confers exclusive power to restrain, regulate, license, tax and suppress dramshops; and the fact that said charter gives all criminal courts original and concurrent jurisdiction for the trial of offenses arising out of any violation of the laws in relation to dramshops, in nowise refers to, qualifies or affects the power theretofore granted; and the inharmony of a provision, giving the judge of the police court exclusive jurisdiction over all cases arising under any ordinance of the city, is relieved by excepting cases arising under dramshop ordinances.

4. ———: ———: ———: ———: ———: **Sunday Law.** The charter of second-class cities only authorizes the passage of ordinances not inconsistent with the State law; the latter absolutely prohibits a dramshop-keeper from selling liquor on Sunday; but the particular provision of a charter giving exclusive authority over the special subject of dramshops must prevail over the general provisions of the State law.

5. ———: ———: ———: ———: ———: **Constitutional Inhibition.** Cities forming a charter for themselves under the Constitution are inhibited by that instrument from passing laws in conflict with the general laws of the State; but cities of the second class receiving their charters direct from the Legislature do not labor under such constitutional disability, and the general provision requiring ordinances to be consistent with the general laws of the State must give way before a special provision granting exclusive control over a special subject; that is, a general prohibition is not inconsistent with a special indulgence. [Cases considered.]

6. ——: ——: ——: ——: ——: Act of 1891. The general dramshop law enacted in 1891 cannot operate as a repeal of the provisions of the statutory charter of cities of the second class, though enacted after the latter, since a general law, though later in time, will not operate as a repeal of a prior special law; and the repealing clause of the act of 1891 is a mere formal provision, which adds nothing to the act itself.

7. ——: ——: ——: ——: ——: Act of 1903. The provision of the act of 1903 providing that in cities of the second class no license be granted without the indorsement of the mayor and the president of the police board, does not affect the control of cities of the second class over the subject of licensing saloons, since in such cities the city alone grants the license and the county courts have nothing to do with it; and the practical effect and operation of the act of 1903 is that the city council in such cities cannot legally grant a license without the indorsement of such mayor and president.

8. ——: ——: ——: ——: ——: General Law. The provisions of the charter of cities of the second class empowers them to suppress entirely saloons; whereas if the general law controlled, the city could not have such power.

Appeal from Buchanan Criminal Court.—*Hon. Benjamin J. Casteel,* Judge.

REVERSED.

*Culver & Phillips* and *Brewster, Ferrell & Mayer* for appellant.

(1) Within its corporate limits the city of St. Joseph had "exclusive power to regulate, license, tax or suppress dramshops." Sec. 5508, Subdiv. 21, R. S. 1899. Subdivision 17 of section 5508, Revised Statutes 1899, gave the mayor and common council power to "license, regulate, tax or suppress . . . saloons, tippling houses and dramshops," and numerous other vocations. This subdivision, applying as it does to numerous occupations and trades, does not attempt to delegate an exclusive power. State v. Clark, 54 Mo. 17; State v. DeBar, 58 Mo. 396; State ex. rel. v. McDonald, 38 Mo. 529. (2) The city had exercised its exclusive power "to regu-

late" dramshops by passing ordinances introduced at, the trial, which ordinances prescribe such regulations for dramshops as were thought proper by the city council. (3) This prosecution was under section 3011, Revised Statutes 1899, which the State contends is in force in the city of St. Joseph. If the statute applies, the defendant was properly found guilty. The ordinance set out in the agreed statement of facts (sec. 14) however only prohibits the keeping open of dramshops from 8:30 o'clock a. m. until 12:30 o'clock p. m. on Sunday and as it is agreed that the defendant kept his dramshop open at 3 o'clock p. m. on Sunday he violated no ordinance of law applicable. (4) The State having delegated to the city the exclusive power to regulate, etc., dramshops, and the city having exercised that power, the general regulations prescribed by the State did not apply within the city, and the trial court erred in convicting the defendant of a violation of that general regulation. State v. Willard, 39 Mo. App. 251; Kerney v. Barber Co., 86 Mo. App. 579; State v. Gordon, 60 Mo. 383; State v. DeBar, 58 Mo. 396; State v. Clark, 54 Mo. 17; Harrison v. State, 9 Mo. 530; State v. Thompson, 160 Mo. 341.

*John D. McNeely* for respondent.

(1) Respondent insists that the grant of power in section 5508 is limited inasmuch as it is to be exercised, "by ordinance not inconsistent with the Constitution or laws of this State," and that section 3011, Revised Statutes 1899, upon which this prosecution is based, is still in full force within the limits of cities of the second class. (2) Appellant rests his case primarily upon the authority of State v. Clark, 54 Mo. 17. Upon examination the dissimilarity between that case and the one in hand is quite clear, and the opinion does not support appellant's position. The State v. Vic DeBar, 58 Mo. 396. (3) Grants of legislative powers to municipalities are

quite strictly construed, and if there is any fairly reasonable doubt concerning the existence of the power, it is denied. 1 Dillon on Municipal Corporations (4 Ed.), sec. 89; Ex parte Joffee, 46 Mo. App. 360; Trenton v. Clayton, 50 Mo. App. 539; Kansas City v. Lorber, 64 Mo. App. 608; Joplin v. Leckie, 78 Mo. App. 8: State ex rel. v. Spencer, 164 Mo. 53; Independence v. Cleveland, 167 Mo. 388.

ELLISON, J.—The defendant was convicted in the criminal court of Buchanan county, of keeping open his dramshop and selling intoxicating liquors therein on Sunday. The case shows defendant's dramshop to be located within the city of St. Joseph, a city of the second class in this State. By the law of the State (section 3011, R. S. 1899), under which this prosecution was begun, it was misdemeanor so to do. By an ordinance of the city it was not a misdemeanor. If the State law applies, defendant is guilty. If the ordinance applies, he is not.

It is provided by the charter of cities of the second class (sec. 5508, R. S. 1899) that, "The mayor and common council shall have power within the city, by ordinance, not inconsistent with the Constitution or any law of this State, or of this article," to do a great many things for the good order; regulation and government of such cities. These things are set out in great number and particularity. The section is lengthy, being divided into forty-three subdivisions. Subdivision 17 is a lengthy subdivision and gives authority "to license, tax and regulate" merchants, hotels, drummers, insurance agents, banks, livery stables, omnibuses, drays and a great variety of other callings and things. The subdivision then proceeds to authorize such cities "to license, regulate, tax or suppress . . . . saloons, tippling houses and dramshops." Passing to subdivision 21, such cities are given "exclusive power to restrain, regulate, license, tax or

suppress dramshops. All criminal courts shall have original and concurrent jurisdiction for the trial of offenses arising out of any violation of the laws in relation to dramshops."

The Supreme Court of the State has, from an early day recognized the right and power of the Legislature to surrender control of misdemeanors to municipalities; and the Legislature has from time to time exercised that right. But when the right is not clearly surrendered to the municipality, each jurisdiction may have and enforce laws concurrently. [Harrison v. State, 9 Mo. 530; Baldwin v. Green, 10 Mo. 410; State v. Gordon, 60 Mo. 383; State v. Wister, 62 Mo. 592; State v. Harper, 58 Mo. 530; State v. Binder, 38 Mo. 450; State v. DeBar, 58 Mo. 396; State v. Clarke, 54 Mo. 17.] The Court of Appeals has followed these cases. [State v. Willard, 39 Mo. App. 251; Kerney v. Barber Co., 86 Mo. App. 573.] Of these cases, it was held in State v. Gordon, that the city of Liberty, under its charter, h&d exclusive jurisdiction of the misdemeanor of disturbing the peace of a family. In State v. Binder, that fermented liquors might be sold on Sunday in St. Louis, though prohibited by State law. In State v. Clark, the court held that a charter power vested in the city of St. Louis to regulate bawdy houses repealed, in the city, the State law prohibiting them. And that case was affirmed in State v. DeBar and is cited with approval in State v. Thompson, 160 Mo. 333, and 99 Mo. 357.

So, it will be seen from the foregoing that if it be true that the Legislature has surrendered to the city of St. Joseph, as a city of the second class, the exclusive control and regulation of saloons within its limits, such action is not without precedent. The question recurs to an interpretation of the charter above quoted. Subdivision 21 uses about as comprehensive a word as could be found when it reads that such cities should have "*exclusive* power to restrain, regulate, license, tax or

State v. Kessels.

suppress dramshops." There was at the time of the adoption of the charter, and is now, other concurrent power over such matter and so when the Legislature said that the city power should be exclusive, it excluded that other concurrent power. The last sentence of subdivision 21, that "All criminal courts shall have original and concurrent jurisdiction for the trial of offenses arising out of any violation of the laws in relation to dramshops," in no way refers to, qualifies or affects the power granted in the first. Without that sentence the criminal court of Buchanan county would only have had appellate jurisdiction of violations of city ordinances in relation to dramshops. With that sentence, the criminal court has original concurrent jurisdiction with the city court; and by force of other law, it has appellate jurisdiction of cases which may be instituted in the city court. We must interpret the statute according to its plain words, and in so doing we cannot find any ground for saying that the act of conferring jurisdiction on a State court to enforce a city ordinance, took from the city a clearly conferred exclusive power to ordain such ordinance.

True, this statute, in the respect last mentioned, like many others, is made to appear inharmonious by other apparently inconsistent provisions. But it is only in appearance. It is enacted in section 5542, that "The judge of the police court shall have exclusive jurisdiction over all cases arising under any ordinance of the city, except suits brought for the collection of taxes due the city. Appeals in all cases tried before him as judge of the police court shall be taken to the court of record having criminal jurisdiction in the county where such city is located." Reading the two statutes together, the effect of subdivision 21 is to except cases arising under dramshop ordinances from the exclusive jurisdiction of the police judge and make it concurrent with the criminal court.

But, as stated at the outset, the charter of cities of the second class only authorizes such cities to ordain ordinances which are not inconsistent with the State law. And the State law absolutely prohibits a dramshopkeeper from selling liquor on Sunday. The ordinance of St. Joseph in permitting sales on Sunday, is undoubtedly inconsistent with such State law. But notwithstanding this prohibition in the part of the charter to which we have just referred, the other portion we have discussed, embodied in subdivision 21, is a particular provision, in terms giving exclusive authority over the special subject of dramshops. Such particular provision, according to a fundamental rule of construction, must prevail over the general provision. In State v. Binder, heretofore cited, the general State law disallowed the sale of beer on Sunday, but the special law of St. Louis, authorized by the State, permitted such sale and the latter was held to prevail. So the charter of the city of St. Louis contained a like provision to that now being considered. But another part of the charter specially authorized the city by ordinance to permit bawdy houses, under certain regulations, whereas the State law condemned them; yet the Supreme Court, in two cases, held "that a particular specified intent on the part of the Legislature overrules a general intent incompatible with the specific one." [State v. Clark, and State v. DeBar, supra.]

Nothing in the case of St. Louis v. Meyer, 185 Mo. 583, affects the views we have herein stated. In the Meyer case the city of St. Louis, under one of its ordinances, attempted to punish Meyer, who was a farmer in St. Louis county, for peddling farm, dairy and garden products in the city without a license. The general State law (sec. 8861, Revised Statutes 1899) exempted such person from the definition of a peddler. It was held that the city ordinance, as thus attempted to be enforced, was contrary to the State law and therefore

of no effect; and that the ordinances and the charter of St. Louis must always be and remain in harmony with the State law. We have already cited cases deciding that notwithstanding provisions in an early charter of St. Louis prohibited the city from passing ordinances inconsistent with the general law of the State, yet ordinances recognizing bawdy houses and permitting the sale of fermented liquor on Sunday were declared to be valid. Those cases and the Meyer case are not in conflict. It is true that in those cases the Legislature in enacting the charter declared that the city could not ordain an ordinance which was inconsistent with the State law, but afterwards the Legislature, in effect, made an exception to that provision by amending the charter, so that in the instance of bawdy houses and sale of liquor on Sunday such city could ordain an ordinance contrary to the general law. The Constitution did not, at that time, prohibit St. Louis from ordaining ordinances contrary to the State law, and therefore the Legislature was at liberty to grant the city such right and the city was at liberty to exercise the right, when granted, free from any restraint by the Constitution. But the makers of the present Constitution gave to certain cities the right to frame charters of their own. That right was given specially to St. Louis by section 23, article 9, of the Constitution, and to all cities of more than one hundred thousand inhabitants by section 16 of the same article. St. Louis framed a charter of its own under its special authority, and Kansas City is the only city which has framed a charter of its own under the latter section. All other cities in the State have their charters direct from the Legislature. The makers of the Constitution, realizing that they were granting this extraordinary power of self-government to a mere subdivision of the State, limited the power within such bounds as prevented them from framing a charter which would authorize ordinances that were inconsistent with the

general law. So, therefore, the city of St. Louis (section 23, aforesaid) and other cities of over one hundred thousand inhabitants, adopting charters of their own (section 16, aforesaid) cannot get from under the control of the general law. It is thus plain that the decision in the Meyer case is based on the Constitution and a general State law; whereas the Clark, DeBar and Binder cases were unaffected by any provision of the Constitution.

Neither is there anything in State ex rel. v. Telephone Co., 189 Mo. 83, which is in any way opposed to our conclusions in this case. That case related to the power of Kansas City to fix telephone charges, and was like the Meyer case, in that it involved the power of a city which had framed a charter for itself. In that case the charter and the "enabling act" itself had given to Kansas City the "exclusive control over its public highways, streets, avenues, alleys and public places. . . . any law of this State to the contrary notwithstanding." But keeping in view the fact that the Constitution only authorized the people of Kansas City (like those of St. Louis) to adopt a charter *subordinate* to the State law, and there being a State law as to the use of the streets (as, for instance, in granting franchises to certain interests which included the use of the streets of such a city), it was properly held that the phrase "exclusive control," necessarily meant, exclusive as to matters of mere municipal concern, which did not conflict with the law of the State.

But, as already stated, as regards all cities of the second class which have not framed their own charters, but have received them direct from the Legislature (the city of St. Joseph being one of them), there is no provision of the Constitution requiring that their ordinances shall be consistent with, or subordinate to the State law. There is such a provision in the statutory *charter* of such cities, but not in the Constitution. But a disability

120 App.—16

imposed by the statute may be removed by the statute, as was done in the Clark and DeBar cases, supra. Now, in this case, the charter of cities of the second class has a general provision prohibiting an ordinance which is inconsistent with the State law, and it has a special provision (that of exclusive control of dramshops) which authorizes ordinances inconsistent with the State law. The two provisions are, apparently, in conflict, for an exclusive right excludes the State law instead of being subordinate to it. In such situation we must have recourse to a fundamental rule of construction, which is, that where a general provision of a statute is encountered by a special provision, the former must give way. In other words, the special provision becomes, in effect, an exception to the general provision; so that, as applied to this case, the statutory charter would read that cities of the second class cannot ordain ordinances inconsistent with the general State law except as to dramshops, they being hereby placed under the exclusive control of such cities.

We have just stated that two provisions were apparently in conflict, but it is only in appearance and not in reality, for "a general prohibition is not inconsistent with a special indulgence." [Smith v. County of Clark, 54 Mo. 58, 69; St. Louis v. Alexander, 23 Mo. 483, 510; State ex rel. v. Macon County Court, 41 Mo. 453 l. c. 459.]

Recurring again to the ruling in State ex rel. v. Telephone Co., supra, it may be asked, if "exclusive" use of streets in the charter of cities which have framed their own charters, is held to mean those uses not disturbed or intrenched upon by the State law as to the use of streets, why is not the same construction put upon charters of cities of the second class and a decision made that such cities will only have exclusive control of dramshops in those matters where no provision is made by the State law? The answer is, that in the telephone case, the rule

of construction which we have stated as applicable to charters of cities of the second class could not be applied because the Constitution stood in the way. The inconsistent provisions in the telephone case did not emanate from the *same source* and the presumption that a special provision was not intended to be overcome by a general provision could not obtain. The Constitution, coming from the highest authority, provided that no ordinance of Kansas City or St. Louis should be inconsistent with the State law; and the word "exclusive," in an ordinance of such city, was therefore limited in meaning so as not to infringe upon the command of the Constitution. A general prohibitory provision coming from an independent superior authority, will overcome or control a special provision coming from an inferior authority, for the reason that the inferior has not power and will not be presumed to have intended to put an exception on what is prescribed by the superior. There was therefore no room in the telephone case for application of the rule we have applied in this case.

But it is said that the general dramshop law enacted in 1891 (Laws 1891, p. 128) operated as a repeal of this provision in the statutory charter of cities of the second class, as it was enacted after the charter. But this cannot be allowed without violating a standard rule for the construction of statutes, which is that a general law, though later in time, will not operate as a repeal of a prior special law. [State ex inf. v. Dabbs, 182 Mo. 359, 366; Ruschenberg v. Railway, 161 Mo. 70; Manker v. Faulhaber, 94 Mo. 430; State ex rel. v. Hostetter, 137 Mo. 636; Railway v. Cass Co., 53 Mo. 28; State ex rel. v. Judge of Probate, 38 Mo. 529.] It is stated by Sedgwick on Statutes, 98: "The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contra-

dicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all."

It is true that the law of 1891 declares that "All acts and parts of acts inconsistent with the provision of this act are hereby repealed;" but that is a formal provision which adds nothing to the act itself. A later law inconsistent with a former law will repeal the former, where they cannot be reconciled, without such general repealing clause. Such clause is not an express repeal of the special provision in the charter of cities of the second class, and repeals by implication, of special provisions are everywhere discountenanced. A similar repealing clause was regarded as non-effective in St. Louis v. Alexander, 23 Mo. 510.

But it is said that the intention of the Legislature to repeal the special provision in controversy is manifested in the proviso added in the Laws of 1903, p. 169, to section 2997, Revised Statutes 1899. That proviso reads; "Provided, that in all cities of the second class no license shall be granted unless the petition therefor shall have endorsed thereon the approval of the mayor and president of the board of police commissioners of such cities." By reference to sec. 2997, it will be seen that the section is addressed to the county courts, and this proviso could perhaps have more appropriately attached as an amendment to subdivision 20 of sec. 5508, to which our attention has been called since the foregoing was written. It is altogether probable that whoever wrote the proviso and attached it to sec. 2997, was laboring under the impression that the county courts of counties in which cities of the second class were located, granted a license as in other towns and cities controlled by the general law. But that is not the case and could not be, under the terms of said subdivision 20. That subdivision

discloses that a license from the city is the *only* license contemplated for a dramshop-keeper in cities of the second class. It is there provided that the mayor and council authorize the proper officers of the city to grant and issue licenses and direct the manner of issuing and regulating the same and the fees and charges to be paid therefor. And that no license shall be granted for more than one year; and that it shall not be for a less sum than seven hundred and fifty dollars, five per cent of which shall be for the State, forty-eight per cent for the county, and the remainder for the city. It is conceded by the attorney for the State that under this provision of the charter the practice has ever been for the *city alone to issue one license and that no license is issued by the county court under the general State law.* In view of this subdivision 20, the county court has not exercised, and does not pretend to exercise, any right or authority over dramshop licenses in the city of St. Joseph. Though this proviso is thus strangely attached to a section of the statute pertaining to the duties of county courts, its practical effect and operation is to amend the charter of cities of the second class so that the city council cannot legally grant a license until the petition for such license has the approval of the mayor and president of the board of police commissioners (an office enacted by the charter) endorsed thereon. But, passing this by, is there any, even the slightest, reason for the claim that such amendment discloses an intention on the part of the Legislature to place the dramshop-keeper of cities of the second class under the general law? We cannot discover any. On the other hand, the provisions of subdivision 20, as is shown by what we have just written, add to the already manifest intention of the Legislature to surrender to cities of the second class the "exclusive power to restrain, regulate, license, tax or suppress dramshops," within the limits of such city.

In assailing the right of the city under its charter to do as it has done through its council—in claiming that dramshops in cities of the second class are governed by the general law—it seems to us that the attorney for the State has allowed the exercise of the power of the council in the present instance, to blind him to other powers which the same charter provision gives to the council, which are contrary to the general dramshop law. The same provision of the charter empowers the city council to *"suppress"* dramshops in cities of the second class. Under the general law dramshops cannot be suppressed in cities of over two thousand inhabitants. On the presentation of a proper application and petition, the license *must* be granted. [State ex rel. v. Meyers, 80 Mo. 601; Scarritt v. Jackson County, 89 Mo. App. 593; State ex rel. v. McCammon, 111 Mo. App. 626.] If the city council should at any time conclude that the best interests of the city demanded that dramshops be wholly suppressed and an applicant for a dramshop license should ask us to compel the granting of the license as provided by the general law, would not counsel then seek to make us understand that the Legislature had wisely taken cities of the second class from under the control of the general law and entrusted such questions to the wisdom and policy of such cities acting through their legislative bodies?

After a careful examination of all the points which have been suggested in the different briefs for our consideration, we feel constrained to hold that the Legislature, by the statutory charter aforesaid, has given over to cities of the second class the exclusive power to regulate, restrain, license, tax or suppress dramshops. And that the city of St. Joseph having exercised such power, the general State law as to dramshops is not applicable to that city, and that the State, until it resumes such authority by act of the Legislature, repealing or amending such charter, is without right to prosecute offenses

under the State dramshop act. The judment is therefore reversed and the defendant is discharged. The other judges concur.