STATE ex rel., JOHN T. DORAN, Appellant, v. COUNTY COURT OF JOHNSON COUNTY, Respondent.

Kansas City Court of Appeals, November 1, 1909.

1. **PUBLICATION OF NOTICE:** Local Option Election. The publication of a notice of a local option election to prohibit the sale of liquor, in a newspaper, commences when the paper begins to reach the public, and not when printed and deposited in sacks in the postoffice prior to distribution.

2. **DATE OF PUBLICATION:** Newspaper. A newspaper dated the 10th of January and given out to the public on that day, is not published until that day though printed and taken to the postoffice at night the day before.

3. **MANDAMUS:** Remedy. If applicant for dramshop license is qualified and presents proper petition the duty is mandatory on county court to grant the license.

4. **OFFICIAL PAPER.** If two papers are designated to publish the notice it must be published in each the requisite length of time and the fact that one of the papers is the official paper of the city, in which the publication was properly made, will not suffice unless it is likewise properly published in the other.

5. **WORDING OF NOTICE.** As to length of time of publication there is no difference in the meaning of the expressions "for four full weeks" and "for four weeks."

Mandamus.

PEREMPTORY WRIT ORDERED.

*J. W. Suddath* for relator.

*W. L. Chaney* and *S. T. White* for respondents.

ELLISON, J.—This is an original proceeding in this court by mandamus seeking to compel the county court of Johnson county to issue to relator a license to keep a dramshop in the city of Warrensburg in such county, a city of more than twenty-five hundred inhabitants.

Due return was made to the alternative writ. Relator then moved for a peremptory writ based upon the return.

The case involves the validity of a local option election held in Warrensburg on the 6th day of February, 1908, to determine whether intoxicating liquors should be sold within the limits of such city, which resulted against the sale of such liquors. Afterwards the relator, conceiving the election to have been void, presented his application and petition to the county court of that county asking a dramshop license. Whether the petition was signed by two thirds of the qualified petitioners in the block, as required by law, was a matter of dispute between the parties in this court. Five of those who signed are conceded to have been proper petitioners. Three others signed whose right is disputed. And three were qualified who did not sign. Thus eleven names were involved. If either one of the three who signed was a proper petitioner then the petition contained the names of two thirds of the qualified petitioners, as determined by the appellate courts. [Scarritt v. Jackson County Court, 89 Mo. App. 595.] And it was the mandatory duty of the county court to grant the license. [State ex rel. v. Turner, 210 Mo. 77, 82; State ex rel. v. Meyers, 80 Mo. 601; State ex rel. v. McCammon, 111 Mo. App. 626; Scarritt v. Jackson County, 89 Mo. App. 585.]

In passing on relator's motion for a peremptory

writ on respondent's return, we concluded that the record showed him entitled to the license unless the local option has been legally adopted. We found that a determination of that question involved the fact whether proper legal notice of the election had been given, that is to say, whether the publication of the notice had been made for the requisite time, and this made necessary the taking of evidence, which was heard by an officer agreed upon by the parties. The evidence has been written down and filed in court.

It appears that the city authorities ordered the notice to be published in two weekly newspapers, the Weekly Journal-Democrat and the Warrensburg Daily Star. The law requires that such notice shall be published for four consecutive weeks, which have been repeatedly held to be for twenty-eight days. [State ex rel. v. Tucker, 32 Mo. App. 620; State v. Dobbins, 116 Mo. App. 29; State v. Swearingen, 128 Mo. App. 605; State ex rel. Gunn v. Cordell, 137 Mo. App. 205, 117 S. W. 655; see also Young v. Downey, 150 Mo. 317, 330.]

And while it is only necessary that it be published in one paper (either a weekly or daily), yet if it be ordered published in more than one it must be published in each for the full length of time. [State ex rel. v. Reed, 134 Mo. App. 582.]

The notice before us was published daily in the Daily Star for twenty-eight days and is conceded to have been properly published for the necessary time in that paper. But it was published in the Weekly Journal-Democrat in issues dated January 10th, 17th, 24th, 31st and February.7th, 1908—the last date being the day after the election, and proof of publication was made to the city council as of those dates. If we accept those dates as being the dates of publication it is apparent that notice of twenty-eight days was not had; the last day being the day after the election, cannot be counted and from the 10th of January to the

State ex rel. v. Johnson County Court.

6th of February, the day of the election, there is not a space (lacking one day) of twenty-eight days to the election.

But it is sought to avoid this condition of the record by showing that in point of fact the publications were made one day ahead of each date, that is, on January 9th, 16th, 23d, 30th and February 6th. This is the point in the case. We will not by any means say that a mere misdating of the distribution of a newspaper to the public would be conclusive of the question. [Riche v. Water Co., 75 Maine 91, 97.] But we do not find that an error in dates was shown by the evidence. The evidence shows that the date of the paper was regarded as the time of its publication, and was in fact its publication, though it was printed the evening before and when printed it was taken to the postoffice between six and nine o'clock p. m. for distribution through the mail. The papers for each postoffice throughout the county, including route men in the city of Warrensburg, were tied up in separate bundles and put in sacks at the printing office and then some time between six and nine o'clock p. m. were taken to the postoffice where the bundles for other offices were taken that night by the postoffice force to the trains to be transported to their respective destination; and the bundles for the "routes" in Warrensburg were delivered to route men by the postmaster the next morning, when they were distributed to the public. Clerks in the postoffice at Warrensburg testified that when the papers were brought to that office (generally between eight and nine o'clock p. m.) those going to offices outside of Warrensburg were sent to the depot and were taken on trains east and west some time after midnight; that there were very few local subscribers for the paper through the postoffice, the most of the city circulation was put in the postoffice in bundles for "route men" who distributed them through carriers, and that the route men did not get them of the postoffice until next

morning. A few took the paper individually through the postoffice, but these could only get it next morning unless, in exceptional cases, where some one having a lock box might get his paper "late at night."

We think it quite manifest from the evidence that the Journal-Democrat was actually published on the day it purported to be—that is, on the day of its date.

It would be unreasonable to say that a notice has been given when the medium of its publication is shut out from the eye of the persons for whom it is intended. To say that, would justify the statement that a verbal notice was given when the thought of the notice was conceived or matured instead of when the words were uttered. The publication of a notice in a newspaper is not the day it is set up in type and printed; it is the day that it may be seen and read in the paper by the public. Not that it must reach every member of the public, but its publication will date from the day when the public begin to receive it from the publisher. We do not think the case of Leroy v. Jamison, 15 Fed. Cas. 373 (Case No. 8271) and others cited by respondent have application to the question in respondent's favor.

Respondent suggests that the Daily Star had been designated by the city authorities as the official paper for the city and that therefore a proper publication in that paper would meet all requisites as to notice. We do not think the point well taken.

There is a difference in the wording of the orders for publication. That in the Daily Star was "for four full consecutive weeks" while that in the Journal-Democrat was "for four consecutive weeks," omitting the word "full." Upon this difference respondent founds a suggestion that a less time was meant for the Journal-Democrat than for the Daily Star. We think there is nothing in the suggestion. Four full weeks are no more nor less than four weeks. If a week's time elapses it is both a week and a full week.

After a careful examination of the record, we find that there was not a legal notice of the election and that it is therefore void. We further find that relator has shown himself to be entitled to the license, and the alternative writ will be made peremptory.

All concur.