STATE OF MISSOURI at the relation of C. W. GARHART, C. E. FLEET-
WOOD and GRAY WRIGHT, constituting the County Court of Chari-
ton County, Relators, v. FORREST SMITH, State Auditor.—125
S. W. (2d) 832.

Court en Banc, March 8, 1939.

*Jno. D. Taylor* for relators.

*Roy McKittrick,* Attorney General, *Tyre W. Burton* and *Olliver
W. Nolen,* Assistant Attorneys General, for respondent.

TIPTON, C. J.—This is an original proceedings in mandamus to
compel Forrest Smith, State Auditor of Missouri, to register a bond
issued by Clark Township in Chariton County, Missouri. Upon the
filing of the application for the writ, respondent waived the issuance
of the writ, agreed that relators' application and petition might be
considered as such writ, and filed his return thereto. The return
alleges that the first date of publication in the newspaper publishing
the notice of the bond election was not twenty-one days prior to the
date of the election, as required by Section 7961 of Revised Statutes
of Missouri, 1929. Relators filed a motion for judgment on the
pleadings.

The application of the relators for an alternative writ of mandamus
against the respondent avers the following:

That the Township Organization Law was and is in full force
and effect in Chariton County, Missouri, and that Clark Township
is one of the duly organized and existing municipal townships in
that county; that Clark Township decided to issue its bonds for the

purpose of building roads and on August 25, 1938, a petition was presented to the county court, as required by Section 7961, Revised Statutes 1929, asking that an election be held to determine if the bonds should be issued for the above mentioned purpose; that on that date the county court entered an order that the publication of the notice of election be printed in a newspaper known as the Chariton Courier, and that the notice that an election would be held on September 15, 1938, be published once a week for three consecutive weeks; that the election was held, and by a vote of 227 to 49 the issuance of the bonds was authorized; that in making proof of publication, the publisher of the newspaper supplied his affidavit in which it was stated that the publications were made on Friday, August 26, 1938, Friday, September 2, 1938, and Friday September 9, 1938; that these dates were the date lines carried on the issues as the official dates of their publication; that thereafter on January 28, 1939, the County Court of Chariton County held a hearing in regard to the actual dates of the publication of these notices; that the evidence at that hearing showed the fact that the newspaper was printed and actually placed in the hands of its readers on Thursday, August 25, 1938, Thursday, September 1, 1938, and Thursday, September 8, 1938, and that such circulation and distribution extended into various parts of the county.

The county court entered a judgment that the actual date of the first publication was August 25, 1938, and that the notice of the holding of the election was actually published twenty-one days before September 15, 1938, the date the election was held.

Under these facts, the question is: Does the official date carried on the newspaper govern or does the date the newspaper was actually put in circulation govern? In other words, was the notice first published Thursday, August 25, 1938, when the newspaper was put in circulation to a majority of its readers in all parts of the county, or was Friday, August 26, 1938, the date line carried on the paper, the first day of its publication. If it was the former, then the notice was published twenty-one days before the election; on the other hand, if it was the latter, the notice was published only twenty days prior to the election and such notice would not comply with Section 7961, supra.

In the case of State ex rel. Doran v. Johnson County Court, 138 Mo. App. 427, l. c. 431, 122 S. W. 316, the Kansas City Court of Appeals, speaking through Judge Ellison, said:

"The publication of a notice in a newspaper is not the day it is set up in type and printed; it is the day that it may be seen and read in the paper by the public. Not that it must reach every member of the public, but its publication will date from the day when the public begin to receive it from the publisher."

Webster's New International Dictionary, Second Edition,. defines the word "publish" as follows: "To bring before the public, as for sale or distribution; To print or cause to be printed, and to issue from the press, either for sale or general distribution, as a book, newspaper, piece of music, engraving, etc."

As previously stated, Section 7961, supra, requires that the notice be published in a newspaper twenty-one days before the election. The object sought to be accomplished by that section was that the people would be notified of the election for twenty-one days. It was not the intention that the notice be printed, but, rather, that the printed notice be made public. Presume a newspaper was regularly printed on Friday of each week; on the particular Friday in question the press broke down and the paper was not actually placed in the hands of its readers until the following Monday. Under such circumstances, notices carried in the paper would not be published on Friday, even though the paper carried the Friday date line. ·

We are of the opinion that under the facts of this case, the notice was published twenty-one days before the election was held, as the county court found by its judgment. For the reasons stated, our peremptory writ should issue. It is so ordered. All concur.