STATE OF MISSOURI ex rel. v. W. A. SMITH, Rela-
tor, v. JOHN W. BERRYMAN et al., Respond-
ents.

Springfield Court of Appeals, April 4, 1910.

1. MUNICIPAL CORPORATIONS: Dramshop License: Ordi-
nance: Mandamus. An ordinance of a city of the third class,
instead of following the state law governing such matters, pro-
vided that if two-thirds of all the members of the city council
duly elected thereto shall be of the opinion that the applicant
for a dramshop license is a law-abiding, assessed, taxpaying
citizen, and that his petition is signed by a majority of the
assessed, taxpaying citizens and guardians of minors owning
property in the square in which the dramshop is to be kept,
the council may grant a license for six months. *Held*, that this
provision of the ordinance was void, and that where the peti-

tioner for the dramshop had complied with the state law, and tendered the license tax required by the city ordinance, the city council will be compelled by mandamus to grant the license.

2. ————: **Power to License and Tax.** By reference to section 5857, Revised Statutes 1899, as amended by the Act of 1907, it will be seen that there are five classes of persons, avocations and things mentioned and considered. On the first group, the council is given only the power to "levy a license tax;" the second, to "license, tax, regulate or suppress;" the third, to "license, tax and regulate;" the fourth, to "regulate, license and restrain;" and the fifth to "license and regulate."

3. ————: **Dramshops: License.** Under section 5857, Revised Statutes 1899, as amended by the Act of 1907, it appears that cities of the third class are given the authority only to levy and collect a license tax on liquor sellers. This does not include the power to suppress or regulate.

4. ————: **License.** Under the simple power to "license," no authority is given to levy a license tax for revenue, and the charge for such license should be limited to the necessary expenses of issuing it.

5. ————: **License Tax: Definition.** A license tax is one imposed on the privilege of exercising certain callings, professions and avocations and, when collected, goes into the city treasury as a part of the general funds of the city.

6. ————: **Powers Limited by Statute.** It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: (1) Those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.

7. ————: ————: **General Welfare Clause.** The "general welfare clause," as generally understood, is like adding general words to special ones in a statute, and is not to be considered as overruling or enlarging the powers expressly granted.

8. ————: **Dramshops: Limitation on Power to Regulate.** Even where authority is expressly granted to cities to regulate dramshops, no other kind of petition than the one required to be presented to the county court can be required by the city, under the provisions of Revised Statutes 1899, section 6258.

State ex rel. v. Berryman.

9. ———: ———: **License Where Dramshop Building is Condemned.** Where a petitioner for a dramshop has complied with the statute with reference to his petition, etc., and has tendered his license tax, and it has become the duty of the city council to issue a city license, it is no excuse for failure to issue such license that the building in which said dramshop is to be conducted has been condemned by the city council and ordered removed.

10. **MANDAMUS: Municipal Corporations: Dramshop License.** The discretion of a municipal body will not be controlled by a mandamus, but where the law makes it mandatory to grant a saloon license upon the compliance by the petitioner with the provisions of the statutes, and the municipal body refuses to issue such license when petitioner has complied with the law, then mandamus is the proper remedy to compel the issuance of the same.

Original Proceedings in Mandamus.

PEREMPTORY WRIT AWARDED.

*Ernest A. Green* for relator.

(1) The only authority and power which cities of the third class have with reference to the granting of dramshop licenses is "to levy and collect a license tax on liquor sellers." When the license tax was paid by relator, he was entitled to the grant of a license. Session Acts of Missouri 1907, p. 98; secs. 5857, 5835, R. S. 1899; Joplin v. Jacobs, 119 Mo. App. 134. (2) Relator is not required to be a citizen of the city of Poplar Bluff in order to be entitled to the grant of a dramshop license. It is not a qualification fixed by statute. Sec. 2993, R. S. 1899; State ex rel. v. McCammon, 111 Mo. App. 134. (3) Cities of the third class have no discretion in reference to granting licenses to conduct dramshops, and no power to do anything in reference thereto, other than to levy and collect a license tax on liquor sellers. Therefore, sections 188 *et seq.*, of the revised ordinances of the city of Poplar Bluff are all invalid and void as being passed in excess of the powers granted to said city as a city of the third class. Laws 1907, p. 98; sec. 5857, R. S. 1899; Joplin v. Jacobs, 119 Mo. App. 134; State v. Butler, 178 Mo. 272; Dillon Mun. Corp. (4 Ed.), 392.

*David W. Hill* for respondents.

(1)   Poplar Bluff, a city of the third class, had the right to ordain the ordinances set out in respondents' return. Sec. 5857, R. S. 1899, as amended by Act of 1907; sec. 5872, R. S. 1899; Warrensburg v. McHugh, 122 Mo. 649; State ex rel. v. Stiff, 104 Mo. App. 685; State v. Meagher, 114 Mo. App. 266; Joplin v. Jacobs, 119 Mo. App. 134.   (2)   Relator is not entitled to a peremptory writ of mandamus unless he can show that he is irreparably injured, and as no one has the right to sell liquor as a matter of course, he is not injured by the refusal of a license.   State ex rel. v. Fort, 107 Mo. App. 340.   (3)   The temporary structure on the west half of lot 61 was built of combustible material, in violation of sections 314 and 315 of the revised ordinances of the city and ordinance No. 24; and ordinance No. 240, finding and declaring the fact that the building was so constructed in violation of said ordinances, and ordering its abatement and removal, is valid.   Section 5835, R. S. 1899; Eichenlaub v. St. Joseph, 113 Mo. 395; Brown v. Carrollton, 122 Mo. App. 276; State ex rel. v. Murphy, 134 Mo. 548.

GRAY, J.—The relator is an applicant for license to keep a dramshop in the city of Poplar Bluff. Respondents are the mayor and councilmen of that city. An alternative writ was issued on a petition of the relator therefor, and respondents have made their return thereto.

The facts are practically agreed on. Poplar Bluff is a city of the third class and had at all times hereinafter mentioned, a population of more than two thousand. On the 25th day of January, 1910, relator filed in the office of the city clerk, an application and petition for a license to conduct a dramshop on lot 61 in said city.

The petition as to the qualifications and number of signers, is in the following language: "The under-

signed, your petitioners, comprising a majority both of the assessed taxpaying citizens and guardians of minors owning property therein, and in the block or square in which said dramshop is to be kept in the city of Poplar Bluff, etc."

On the 8th day of February, 1910, the county court of Butler county granted to the relator a license to keep a dramshop on said lot 61. On the 16th day of February, the relator paid to the city the amount required by the ordinance hereinafter mentioned for a dramshop license. The petition was first presented to the council on the evening of February 7, 1910, and at that time the council refused to grant a license. On the 21st day of February, 1910, the city clerk, at the request of the relator, called up the matter again before the council, but the council refused to take any action thereon.

At the time complained of, it is claimed by the respondents that there was in force in Poplar Bluff, an ordinance relating to granting licenses to keep dramshops. It will not be necessary to set out all of said ordinance herein, as it is in conformity to the State law, except as hereinafter stated.

The ordinance instead of following the State law governing such matters, provides that if two-thirds of all the members of the city council duly elected thereto, shall be of the opinion that the applicant is a law-abiding, assessed taxpaying citizen, and that his petition is signed by a majority of the assessed, taxpaying citizens and guardians of minors owning property in the square in which the dramshop is to be kept, the council may grant a license for six months. And then provides that if a majority of all the members elected to the city council shall be of the opinion that the applicant is a law-abiding person, as aforesaid, and the petition contains the proper names subscribed thereto of two-thirds of the said assessed taxpaying citizens, as aforesaid, then the council shall grant the license. The

ordinance also contains a provision that the money collected for the license shall be paid into the general revenue funds of the city.

The respondents in their return set out said ordinance and denied that the relator, at the time mentioned, was a citizen of the city of Poplar Bluff; admitted that he filed a petition, and alleged "that said petition did not purport to be signed by two-thirds majority of the assessed taxpaying citizens and guardians of minors owning property in the square where the dramshop was desired, and that respondents do not know whether said petition does, in fact, contain such majority, and deny that the relator at any time, before the council, introduced or offered any competent proof or testimony establishing the facts in regard to his qualifications and the sufficiency of his petition;" alleged that at the place where it was proposed to conduct the dramshop, there was no permanent building, and that the city had duly enacted an ordinance defining fire limits within the corporation, and that a temporary structure known as an "Air Dome," without any roof, was erected on said lot, and subsequently, without any legal authority, a skating rink was erected, and the person so erecting it agreed to remove the same, and that the city council had passed an ordinance ordering the removal of said building, as being a nuisance, and erected and maintained in violation of the ordinances of the city relating to prevention of fires.

On the hearing it was agreed that the relator was a law-abiding, assessed taxpaying male citizen of Butler county, but not of Poplar Bluff, and that his petition presented to the city council, contained the names of two-thirds majority of the assessed taxpaying citizens, including guardians of minors owning property in the square where the dramshop license was desired.

After the return had been filed and the said admissions made, the relator filed his motion for peremp-

tory mandamus and his right to have the same issued, is the matter now to be considered.

The fact that relator was not a citizen of the city of Poplar Bluff would not justify the council in refusing him a license, as we do not believe that the city, in any event, has the power to prescribe any additional qualifications for a dramshop license than are contained in the general law.

The first question to be determined is: Has a city of the third class the right to require a petition signed by a majority of the assessed taxpaying citizens as a prerequisite to the granting of a dramshop license? And if it has the right to require a petition, is that part of the ordinance valid which provides that before a license shall be granted on petition signed by a majority of the qualified petitioners, that a finding of the proper qualifications of the applicant shall be made by two-thirds majority of all the members of the council elected?

The section of the statute relating to granting of license to keep dramshops is 5857, Revised Statutes 1899, and as amended by the Act of 1907, reads as follows:

"The council shall have power and authority to levy and collect a license tax on beer depots or storerooms, auctioneers, druggists, hawkers, peddlers, banks, pawnbrokers, merchants of all kinds, . . . taverns, hotels, public boarding houses, liquor sellers, etc.; and to license, tax, regulate or suppress ordinances, money brokers, money changers, intelligence and employment houses, fortune tellers, . . . billiard tables, pool or other tables, boxing and sparring exhibitions, shows and amusements, tippling houses; and to regulate, license and restrain runners for steamboats, cars, stages and public houses; and to license ferries, and to regulate the same and the landing thereof within the limits of the city."

By reference to the above section, it will be seen

that there are five classes of persons, avocations and things mentioned and considered. On the first group, the council is given only the power to "levy a license tax;" the second, to "license, tax, regulate or suppress;" the third, to "license, tax and regulate;" the fourth, to "regulate, license and restrain;" and the fifth, to "license and regulate."

In St. Louis v. Insurance and Trust Co., 47 Mo. 150, in speaking of a similar statute, the court said: "These provisions, contained in the same section, abundantly show that the mind of the lawgiver was directed to the subject, and that the power to tax was given where it was intended to be exercised, and that it was withheld where it was not so expressed."

In the case just quoted from, the court was construing the authority of a city to impose a license tax of two hundred dollars per year on an insurance company, and the power given in the charter was simply to license all insurance companies, but as in the case now under consideration, this clause was found in a statute wherein numerous persons, occupations and things were considered and regulated, and in some the power was given to "license, tax and regulate," and some to "license and suppress," and some simply to "license." And the court held that under the simple power to license no authority was given to levy a license tax, and said: "The right to license an employment does not imply the right to charge a license fee therefor with a view to revenue, and the authority of a city will be limited to such charge for the license as will cover the necessary expense of issuing it."

By a careful study of section 5857 as amended by the Act of 1907, it will be seen that the same was not carelessly constructed or enacted. In the first place, we find a large number of persons and occupations classed, and as to all of them the city is given the power to levy a license tax. A license tax is one imposed on the privilege of exercising certain callings, profes-

sions and avocations, and when collected, goes into the city treasury as a part of the general funds of the city. [Levy v. Louisville, 28 L. R. A. 480.]

Another class is then considered, and the city may license (which means levy a sum sufficient to pay the costs and expenses of issuing a license with no view to revenue) or in its discretion it may "tax, regulate or suppress" them. In another class, the right to "license, tax and regulate" is given with no authority to suppress. In another, the right to "regulate, license and restrain," but no authority given for a license tax, and by an examination of the statute, the reason for not levying a license tax is apparent, as this class only applies to porters for steamboats and public houses. And then we have the additional class with the simple power to "license and regulate," and this is limited to ferries alone.

The case of St. Louis v. Insurance and Trust Co., supra, is quoted from at great length in the City of St. Charles v. Elsner, 155 Mo. 678, 56 S. W. 291, and the reasoning thereof endorsed.

By reference to a similar statute governing cities of the fourth class, to-wit: Section 5978. It will be found that the Legislature has provided that the mayor and board of aldermen shall have power and authority to regulate and to license and to levy and collect a license tax. And cities of the second class, section 5508, are given exclusive power to restrain, regulate, license, tax or suppress dramshops.

One other statute must be taken into consideration in arriving at a proper construction of these statutes, to-wit: Section 6258, Revised Statutes 1899, as follows: "Any municipal corporation in this state, whether under general or special charter, and having authority to pass ordinances regulating subjects, matters and things upon which there is a general law of the state, unless otherwise prescribed or authorized by some special provision of its charter, shall confine and

restrict its jurisdiction to the passage of its ordinances to and in conformity with the state law upon the same subject."

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: (1) Those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) Those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." [St. Louis v. Kaime, 180 Mo. 322, 79 S. W. 140.]

If we follow the case of St. Louis v. Insurance and Trust Co., supra (and it is our duty to do so), then we must agree that section 5857 expresses the intention of the Legislature as to the power of cities of the third class concerning dramshops. And in addition thereto, we must take into consideration the fact that after the attention of the Legislature had been called to this identical section of the opinion of Judge ELLISON in City of Joplin v. Jacobs, 119 Mo. App. 134, 96 S. W. 219, the statute was amended in order to authorize the city to suppress wine rooms and to prohibit the sale of intoxicating liquors to females, but the simple power to levy a license tax on dramshops was not changed.

We find in the charter of cities of the third class, a general welfare clause which provides that the mayor and council shall have power to enact and ordain any and all ordinances not repugnant to the Constitution and laws of this State, and such as they shall deem expedient for the good government of the city, the preservation of peace and good order, the benefit of trade and commerce, and the health of the inhabitants thereof, and such other ordinances, rules and regulations as

may be deemed necessary to carry such powers into effect. [Section 5834, Revised Statutes 1899.]

The respondents claim that this general welfare section gives the cities of the third class the power to enact any ordinances regulating dramshops that is consistent with the laws of the state on the same subject. If there was no special provision concerning the power of cities as to dramshops, then this position undoubtedly would be correct. But if this proposition is accepted, then a city of the third class limited by the express provision of its charter to the power of levying a license tax, has the same power regarding dramshops as other cities wherein the power is given to license, tax and regulate.

The "general welfare clause" as generally understood, is like adding general words to special ones in a statute, and not to be considered as overruling or enlarging the powers expressly granted. [St. Louis v. Kaime, 180 Mo. 309, 79 S. W. 140; 1 Dillon on Municipal Corporations (4 Ed.), 392, 393; Ruschenberg v. Railroad, 161 Mo. 70, 61 S. W. 626.]

In the first case above cited, Judge Fox quotes approvingly from Dillon, as follows: "Occasionally, the charter or incorporating act, without any special enumeration of the purposes for which by-laws may be made, contains a general and comprehensive grant of power to pass all such as may seem necessary to the well-being and good order of the place. More frequently, however, the charter or incorporating act authorizes the enactment of by-laws in certain specified cases, and for certain purposes; and after this specific enumeration a general provision is added, that the corporation may make any other by-laws or regulations necessary to its welfare, good order, etc., not inconsistent with the Constitution or laws of the State. This difference is essential to be observed, for the power which the corporation would possess under what may, for convenience, be termed 'the general welfare clause,' if it

stood alone, may be limited, qualified, or, when such intent is manifest, impliedly taken away by provisions specifying the particular purposes for which by-laws may be made. It is clear that the general clause can confer no authority to abrogate the limitations contained in special provisions. When there are both special and general provisions, the power to pass by-laws under the special or express grant can only be exercised in the cases and to the extent, as respects those matters, allowed by the charter or incorporating act; and the power to pass by-laws under the general clause does not enlarge or annul the power conferred by the special provisions in relation to their various subject-matters."

In State v. Butler, 178 Mo. 272, we find the rule to be declared as follows: "The powers of a municipal assembly to pass by-laws under a general welfare clause, can never be exercised to enlarge or annul specific provisions."

When the provisions of section 5857 are considered and measured with the rules applied by the Supreme Court in such cases, it is doubtful if a city of the third class has the power to regulate dramshops in the same manner and to the extent that it would if it was not limited by the special provisions of that section. It is not, however, necessary to the final determination of this case that we should thus declare. We have said more on this subject than we otherwise would, were it not for the fact that counsel for the respondents, in written brief and oral argument, has earnestly requested an expression of our views in order that further legislation along the line may be urged in case we should hold that cities of the third class do not have the power of other cities in regard to regulating the liquor traffic.

The court of last resort in this State, has construed section 6258 in a number of cases and the rule is clearly declared that even where cities have the power to

regulate, that the ordinance must, in all things, comply with the State law regulating the same subject. [St. Louis v. Meyer, 185 Mo. l. c. 592, 84 S. W. 914.]

And even where the authority was expressly granted to cities to regulate dramshops, it has been held in this State that no other kind of a petition than the one required to be presented to the county court can be required by the city. [State ex rel. v. McCammon, 111 Mo. App. 626, 86 S. W. 510.]

In the case just cited, the city of Albany, a city of the fourth class, had an ordinance providing for a petition signed by a majority of all the taxpaying citizens of the city, instead of the block, as the general law required. The court held the ordinance void, as in conflict with the State laws on the same subject.

The ordinance now under consideration prohibits a majority of the city council from granting a dramshop license, unless two-thirds of all the members elected to the council shall be of the opinion that the applicant is a law-abiding, assessed, taxpaying male citizen, and even though the petition is signed by two-thirds of the assessed, taxpaying citizens of the city, and the applicant is a person qualified under the law to have a license, yet it shall not issue unless a majority of all the members elected to the city council shall be of the opinion that the applicant is a law-abiding person.

Under the State law, a majority of the city council has the power to pass an ordinance, and a majority of the council has the power to perform all general acts, and a majority of the county court has authority to grant a license to keep a dramshop on a majority petition. But under the ordinance of the city of Poplar Bluff, in order to get a license on a majority petition, it is necessary that the applicant convince two-thirds of the members of the city council that he is possessed of the proper qualifications. If the city has

142 App—25

the right to pass an ordinance requiring two-thirds of the city council to be of the opinion that the applicant is a proper person to have a dramshop license, then it can pass an ordinance requiring that all the members elected to the council shall be of that opinion before the license shall issue.

The ordinance, in order to conform to the State law, should provide that the majority of the members of the city council elected shall have the right to grant a dramshop license, and that if a majority of the members elected are of the opinion that the applicant is a law-abiding person, as aforesaid, and the petition required by law contains all proper names subscribed thereto, of two-thirds of the qualified petitioners to sign a dramshop petition, then the license shall issue.

Suppose a petition is presented to the city council for a license, and a fair majority of all the members elected to the council are of the opinion that the applicant is a law-abiding, assessed, taxpaying citizen, and his petition is signed by a majority of the persons authorized to sign such petition under the ordinance in question, he is not entitled to a license. This is an entirely different regulation from the one fixed by the laws of the State. Section 4160, Revised Statutes 1899, provides: "Words importing joint authority to three or more persons, shall be construed as authority to a majority of such persons, unless otherwise declared in the law giving such authority."

The respondents assert that the petition presented to the council did not purport to be signed by two-thirds of the assessed, taxpaying citizens and guardians of minors owning real estate in the block, as shown by the last previous annual assessment and vote of the city, and that no evidence of that fact was presented to the council. If the ordinance of the city regarding dramshop petitions is legal, then the failure to offer evidence before the council showing that a petition was signed by the requisite majority, would pre-

clude us from issuing the writ prayed for on the motion now being considered. [State ex rel. v. Packett, 136 Mo. App. 700; same case on rehearing, 119 S. W. 25; Conlee v. Clay City, 102 S. W. 862.]

The respondents say they were justified in refusing the license, because at the time it was applied for another ordinance had been passed providing for the removal of the building in which the relator proposed to keep his dramshop. The authorities upon this subject are collected in the note to Brown et al v. Jugenheimer, 18 L. R. A. (N. S.) 386, and the rule seems to be that in cities where the power is given to grant licenses in the discretion of the council, and where the council is given express power to regulate, that the number of saloons and their localities is a matter within the discretion of the council. But when it is mandatory to issue a license on the petition of taxpaying citizens of the municipality, then the council cannot refuse to issue the license on account of the number of saloons or their localities. In this State it is expressly provided by law that if the petition is signed by a certain number of taxpaying citizens, the council shall issue a license.

The relator could not prohibit the council from removing the building if it was erected in violation of a valid ordinance relating to fire limits, simply because he had a license from the city to keep a dramshop at that place. This is specially true in this particular case. When he applied for his license, he was notified of the intention of the city council to remove the building wherein he proposed to conduct his dramshop under the city license, and for that reason the council refused him a license. He has applied to this court and alleged in his petition, and now maintains such proposed action on the part of the council is no excuse for refusing to grant him his license. If he opens up a dramshop in the building, he does so with his "eyes open,"

and with a full knowledge of the intention of the council.

It is insisted by respondents that the courts will not issue writs of mandamus to compel the issuing of a saloon license. It is true that the discretion of a court or municipal body will not be controlled by that remedy, but even under the State law where a city involved contains a population of 2000 or more, and a certain character of petition is presented, the law makes it mandatory to grant the license, and in such cases, mandamus is a proper remedy to compel the issuance of the same. [State ex rel. v. Meyers, 80 Mo. 601; State ex rel. v. Ashbrook, 154 Mo. 375, 55 S. W. 627; State ex rel. Hanks v. Packett, 119 S. W. 25.]

We are of the opinion that all that part of the ordinance of Poplar Bluff requiring two-thirds of the members elected to the council to be satisfied that the applicant possesses the statutory qualifications for a dramshop license, is invalid, and regardless of the question whether the cities of the third class have the power to require petitions of the character required under the dramshop act to be presented for a dramshop license, yet in as much as the relator applied for his license and paid to the city clerk the amount required under the other provisions of the ordinance, we are of the opinion that the council should have granted him the license, and that a peremptory writ should be awarded as prayed, and it is so ordered. All concur.