STATE OF MISSOURI ex rel. FITCH, Relator, v. EDWIN LONG et al., Respondents.

Springfield Court of Appeals, June 3, 1912.

1. MUNICIPAL CORPORATIONS: Dramshop License: Increasing License. In a mandamus proceeding against a city of the fourth class to compel the issuance of a dramshop license to the relator, it appeared that the county court had renewed the relator's license for six months, but before the relator presented his application to the board of aldermen for a renewal of his license the board passed an ordinance increasing the dramshop licenses from $500 to $750, for each six

State ex rel. v. Long.

months. The relator claims he was entitled to his license upon the payment of $500 and that the ordinance is in conflict with the state law because it requires the payment of a tax in excess of the amount the statute allows the county court to assess for a license. *Held*, that the city has a right to increase the license fee and could require the relator to pay the $750 as provided by the ordinance before issuing him a license.

2. DRAMSHOP LICENSE: Renewal: Increasing License: County Courts. Section 7206, Revised Statutes 1909, does not provide that the county court shall issue a dramshop license for the second six months upon the payment of the amount collected for the first six months.

3. COUNTY COURTS: Dramshop License: May Refuse to Renew. A county court is not compelled at the expiration of the first six months to renew a dramshop license for another six months, but may refuse to do so for any reason it may have refused to issue it when first applied for.

4. MUNICIPAL CORPORATIONS: Ordinances: Prescribing Heavier Penalties than State Law. The mere fact that a municipal ordinance prescribes a heavier penalty than the state law for the same offense does not render the ordinance void as being inconsistent with the general law of the state.

5 ————: County Courts: Dramshop License. The statute gives the right to the county court to fix the amount of dramshop license for state and county purposes and the board of aldermen of cities of the fourth class is given the right to fix the amount in such city. They are not inconsistent provisions, although the amount the county court may assess is limited by the statute and the board of aldermen is not controlled by the limit placed upon the county court.

6. ————: Dramshop License: Amount Must Be Reasonable. Although the board of aldermen of a city of the fourth class in fixing the amount to be paid for dramshop licenses is not limited to the amount the county court may charge for such license, yet if the board of aldermen were to assess an exorbitant sum the ordinance would be unreasonable and therefore void.

7. ————: ————. The Legislature did not intend that section 7225, Revised Statutes 1909, should in any manner regulate the granting of dramshop licenses by municipalities, as their right and power already existed under their charters.

## Original Proceeding in Mandamus.

Writ denied.

*Bland, Crites & Murphy* for relator.

*John O. Holmes* for respondent.

GRAY, J.—The relator is an applicant for license to keep a dramshop in the city of Rolla, a city of the fourth class. The respondents are the mayor and board of aldermen of that city. An alternative writ was issued by the clerk of this court, and respondents have made their return thereto. The facts are conceded, and there is but one point for decision.

At the November term of the county court of Phelps county, the relator presented his application and petition for a license to keep a dramshop at his place in the city of Rolla. The county court found that he was entitled to a license, and a six months' license was issued to him, expiring on the 20th day of May of this year. On the 19th day of November, 1911, the city of Rolla caused to be issued to relator a dramshop license under the ordinances of said city, and expiring on the same day his county license expired. On the 6th day of May of this year, the relator presented his application for a renewal of his license to the county court of Phelps county, and otherwise complied with the law regarding renewal of licenses, and the court granted a license for six months from the 20th day of May. On the 6th day of May, the relator presented his application for a renewal of his license to the city authorities.

When the license was originally granted, and at the time the county court renewed the same on May 6th, there was an ordinance in force in the city of Rolla, fixing the dramshop license fee at the sum of $500 for each six months. It further appears that on the 6th day of May, and before the relator presented his application to the board for a renewal of his license, the board passed an ordinance increasing the dramshop license fee to $750 for each six months. The

relator claims he is entitled to his license upon the payment of $500, and the respondents claim they have the right to collect $750 therefor, and this is the only point in the case.

In determining the legal question presented, it is proper to begin with the proposition that the county court of Phelps county and the board of aldermen of Rolla, are independent bodies not governed altogether by the same law, and that the powers of both are limited and prescribed by law. Under the statute, the county court is not authorized to grant a dramshop license until the person applying therefor has filed a petition in conformity to the statute and an application in which it is stated that the applicant is a law-abiding, assessed, taxpaying citizen. The statute provides that when such an application and petition have been filed, the county court may grant a license for the period of six months; that the petition shall be good for the period of twelve months, and at the end of the first six months' period the county clerk may grant a renewal license for an additional six months, upon the payment by the applicant of the same amount that he was required to pay for the first six months.

The municipal ordinance of Rolla, relating to dramshops, does not require the applicant to file any petition, but only an application stating where the dramshop is to be kept, and the full name of the applicant. The ordinance then provides: "If the board of aldermen be of the opinion that the applicant is a person of good moral character and suitable to keep a dramshop, they shall order a license to be issued to said applicant."

The ordinance also differs from the statute in regard to its duration. The statute provides that the license shall be issued for six months while the ordinance provides that it shall be issued for not less than six months.

Leaving out of consideration sections 9582 and 7225, Revised Statutes 1909, we would have no hesitancy in saying that the relator is not entitled to the relief prayed for. Section 9582 reads: ''Any municipal corporation in this state, whether under general or special charter, and having authority to pass ordinances regulating subjects, matters and things upon which there is a general law of the state, unless otherwise prescribed or authorized by some special provision of its charter, shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the state law upon the same subject.''

In State ex rel. v. McCammon, 111 Mo. App. 626, 86 S. W. 510, the relator, as in this case, applied for a writ of mandamus to compel the board of aldermen of the city of Albany, a city of the fourth class, to grant him a dramshop license. Albany contained more than two thousand inhabitants, and it was admitted that the relator possessed all the qualifications and had complied with the statutes regarding dramshop licenses, and that he was entitled to his license, unless his right was controlled by an ordinance of the city by which applicants for dramshops were required to obtain two-thirds of all the qualified petitioners of the entire city, instead of the block, as required by the state statute. The court granted the writ and said: ''We are of the opinion that the charter powers relied upon do not confer authority upon the city to overturn the general law on the subject of dramshops. So therefore when the state law says that a license shall be granted on the petition of two-thirds of the inhabitants of a block, the board of aldermen have not the authority to say that there shall be a petition of two-thirds of the entire city. Though the city is authorized to regulate a dramshop, it cannot regulate it in those particulars which would be inconsistent with the regulations made by the state.''

In State ex rel. Smith v. Berryman, 142 Mo. App.
373, 127 S. W. 129, the relator applied to this court
for a writ of mandamus to compel the mayor and
council of the city of Poplar Bluff to grant him a
dramshop license.  The city had an ordinance which
required a majority of all the members elected to the
council, to be of the opinion that the applicant was a
law-abiding person before granting him a license.  It
was agreed that the relator was a law-abiding, as-
sessed, taxpaying, male citizen of Butler county, and
that his petition presented to the city council con-
tained the names of two-thirds majority of the assessed
taxpaying citizens and guardians, as required by the
statute.  We held that the city did not have the power
to prescribe by ordinance, that to entitle a person
to a dramshop license, two-thirds majority of all the
members of the council elected should first find that
he possessed the proper qualifications.

The relator says the statute provides that the
amount fixed for the renewal license shall be the same
as was collected for the first six months.  We do not so
construe the statute.  Section 7206 does provide that
the county clerk in vacation, shall issue the license for
the second six months upon the payment of the amount
collected for the first.  Section 7207 requires the clerk
to report to the county court all licenses granted by
him in vacation.  Section 7199 provides that there
shall be collected on each license, a state and county
tax of not less than $300 or more than $600—the
amount of the tax in every instance to be fixed by the
court granting the license.

In State ex rel. v. Higgins, 84 Mo. 531, the court
said:  "The three sections when read together, show
that the grant of a license by the clerk in vacation,
is but for the convenience of the dramshop keeper and
to prevent him from being forced to close up his place
of business, until the next term of the county court,
in the event his first license should expire in vaca-

tion of the court, and that the license issued by the clerk in vacation, to be good for six months, must be reported to the court, and be by it renewed."

It is further held in the Higgins case, that the office of the petition is simply to confer jurisdiction on the court to issue a license to the applicant, and that it confers such jurisdiction for one year from the date of its filing, but it gives no rights whatever to the applicant for a license, and that at the expiration of six months, the court is not compelled to renew the license, but is at liberty to refuse it for any reason it might have refused it when first applied for.

It is claimed the ordinance is in conflict with the state law, because it requires the payment of a tax in excess of the amount the statute allows the county court to assess for a license.

In St. Louis v. Delassus, 205 Mo. 578, 104 S. W. 12, the city prosecuted the defendant to recover a fine for violating a city ordinance. The state law fixed the penalty for the same act at a fine not exceeding fifty dollars, while the city ordinance fixed the fine at not less than twenty-five dollars, nor more than one hundred dollars. It was claimed that in as much as the Constitution provides that the municipal charter and ordinances must be consistent with and subject to the Constitution and laws of the state, that the ordinance was void, but the court held that "consistent with" did not import exact conformity but meant substantial harmony, and that of necessity, there must be more or less variance between the municipal ordinances and the state law, and that the ordinance was not so inconsistent with the Constitution as to render it void.

In Kansas City v. Hallett, 59 Mo. App. 160, the court held that while the municipal ordinances, to be of any validity, must be consistent with the general statutes of the state, the mere fact that the ordinance prescribes a heavier penalty than the state law for

the same offense, does not render the ordinance void as being inconsistent with the general laws of the state.

It seems to us that giving to the county court the right to fix the license for state and county purposes, and the board of aldermen the right to fix the amount in cities of the fourth class for city purposes, are not inconsistent provisions, although the amount the county court may assess is limited by the statute. Of course if the aldermen were to assess an exorbitant sum, the ordinance would be unreasonable, and therefore, void.

The relator further contends that section 7225 of the Revised Statutes 1909, controls the action of the council in this matter. This section is found in the general dramshop act, and provides that that act shall apply to and be in force in every incorporated town and city in the state, any ordinance of such city to the contrary notwithstanding. This section was enacted in 1907, and the reason for which is apparent. Just before the Legislature convened in 1907, the Kansas City Court of Appeals had held in State v. Kessels, 120 Mo. App. 233, 96 S. W. 494, and State v. Binswanger, 122 Mo. App. 78, 98 S. W. 103, that the state law was not in force in the city of St. Joseph, and that that city had the exclusive power to regulate and license dramshops. The Legislature enacted this section in order to annul the effect of those decisions and to put the state law in force in every part of the state. It was not intended that the act should in any manner regulate the granting of licenses by municipalities, as that right and power already existed under their charters, and section 9582 was in full force requiring that all municipal regulations be in conformity to the state law.

We are not dealing with the equities of the case. They were for the board of aldermen to consider at the time the relator applied for his dramshop license,

and the record shows that three of the aldermen were in favor of granting the relator his license at the price charged for the first six months. The members of the board who voted to grant the license, were, perhaps, governed by the fact that the applicant had applied to the county court and had paid his money in good faith, relying on the ordinance of the city, and that it was unjust to him to materially increase the license fee at a time when it was too late for him to withdraw his money from the county and state. These matters are not for our consideration, as we must be controlled by the statute and ordinances as we find them. It is our conclusion that the city had the right to increase the license fee, and the sole remedy of the relator was to apply to the courts to have the ordinance declared void if the amount fixed was unreasonable.

We are of the opinion that the relator was not legally entitled to a license without paying the sum provided in the ordinance as amended, and therefore, the peremptory writ will be denied.

*Cox, J.,* concurs; *Nixon, P. J.,* not sitting.